In re COMMERCIAL NATIONAL BANK OF SHREVEPORT.

UNITED STATES of America, Plaintiff,

v.

COMMERCIAL NATIONAL BANK OF SHREVEPORT in Liquidation and James R. Russell, Shareholders' Agent, Defendant.

Civ. A. Nos. 3598, 4675.

United States District Court W. D. Louisiana, Shreveport Division.

April 3, 1956.

T. Fitzhugh Wilson, U. S. Atty., Shreveport, La., T. D. Taubeneck, Tax Division, Dept. of Justice, Washington, D. C., for plaintiff.

T. Haller Jackson, Shreveport, La., for defendant.

DAWKINS, Sr., District Judge.

The briefs and arguments in these two cases cover a multitude of points, but reduced to simple terms, there are only two issues. First, was the alleged tax debtor required to seek review through the Tax Court of the Commissioner's holding that the sum involved, $462,269.83, was income, or can it be properly determined by this court? The total sum left after liquidation of the old bank, and the end of the litigation, was in excess of $800,000 and was paid to the Comptroller through his administratively appointed receiver. From this without consulting the court, the Comptroller paid the expenses and fees of what this court thought was an unnecessary receivership, including some $60,000 to the receiver's attorneys or a total of more than $200,000 before turning over the balance to the Agent for the Stockholders of the old bank, amounting to something more than $600,000. Thereafter, this court had to determine other expenses and fees incurred in the long litigation, including the fees to the attorneys for the Stockholders' Committee of the Old Bank, whose intervention had been approved both by this court and the Court of Appeals. The latter's attorneys fees were also fixed in the sum of $60,000, thereby further reducing the funds to be distributed to the old stockholders. In this situation the remaining funds having been placed in the custody of this court for those purposes, I am of the view that it had jurisdiction to determine all claims, including that of the United States for income taxes, without the necessity to follow the usual routine of review by the Tax Court. In fact there was nothing over which the parties could litigate, until it had been held the "Tax Saving" should go to the stockholders of the Old Bank. Accordingly this court required the Tax Commissioner to file his demand here. See Section 274(a) of the Internal Revenue Code of 1939, 26 U.S.

C.A. § 274(a) and Regulations of the Commissioner 118, Section 39.274–(1). See also Clifton City Bank v. Commissioner, 6 B.T.A. 643.

The second question; was the $462,269.83 thus "saved" income as defined by the Internal Revenue Code of 1939? It was realized by the Old Bank under the following circumstances: In the contract between the Commercial Bank *of* Shreveport, called the Old Bank, and the Commercial National Bank *in* Shreveport, called the New Bank, the former conveyed to the latter its entire banking business, including more than $3,000,000 in cash and other items treated as cash and pledged or hypothecated all its other assets together with its note of $1,000,000 as security. In return the New Bank assumed the liability to depositors and other current indebtedness, but excluded liability to old stockholders. Among assets so transferred was a substantial amount of real property. As compensation, the New Bank was to receive 6% per annum upon daily balances, and also upon the $1,000,000 note. The legal title to all real property conveyed was thus placed in the New Bank.

Under the law of the state, in determining the value of stock in a bank for assessment purposes, to avoid double taxation upon the corporation and its stockholders, the assessed value of real estate standing in the bank's name, after payment thereon of ad valorem taxes, is deducted in fixing the value of the bank stock. Hence, the assessed value of the real estate thus pledged remaining unsold from year to year was deducted from the assets of the New Bank in assessing its stockholders, but the ad valorem taxes thereon were paid and charged to the Old Bank in the accounting. Therefore, during the many years of liquidation and litigation the "saving" increased, and when paid over to the Comptroller's Receiver, amounted to the sum stated, $462,269.83.

This litigation, which was mainly over the "tax saving", had a tortious course of several years back and forth from this court to the Court of Appeals. It would serve no useful purpose to cite the decisions, but they can be found in the footnotes to the last opinion of the Court of Appeals, which finally returned to the original judgment of this court. See Connolly v. Commercial National Bank in Shreveport, 189 F.2d 608.

It was the duty of the New Bank to pay the taxes on this real estate and to charge them to the Old Bank without more. Had the former's attempted disposition of the "savings" been allowed to stand its stockholders alone would have benefited. In that event only about one-half of the net balance paid to the Receiver would have been realized for the stockholders of the Old Bank. But, when the New Bank was forced to disgorge this $462,269.83, it became the property of the Old Bank. As the litigation ended, only the State of Louisiana was the loser to the profit of the Old Bank. This gain was not profit from any business operation by the Old Bank or for its account; nor did it meet any of the other specific definitions of income found in Section 22(a) of the Revenue Code of 1939, 26 U.S.C.A. § 22(a), but falls under the all-inclusive last clause of that section, "gains or profits and income derived from any source whatever." See Commissioner of Internal Revenue v. Glenshaw Glass Company, 348 U.S. 426, 75 S.Ct. 473, 98 L.Ed. 483, and General American Investors Company v. Commissioner, 348 U.S. 434, 75 S.Ct. 478, 98 L.Ed. 504, both handed down on February 28, 1955 which I am unable to distinguish in principle from the present case. I further think enough has been written about this long controversy and no useful purpose could be served by an extensive discussion of the points and cases cited by the parties. The essential facts have been stated above and it is my view that the "tax saving" was taxable income to the Old Bank to whom it was adjudicated. However, to recover this fund there had to be paid therefrom the attorneys fees allowed to the Receiver of $60,000, and the same amount to the attorneys for the intervening stockholders committee or a total of $120,000

which, before calculating the taxes, must be deducted from the $462,269.83 as of the date these fees were paid. It is unfortunate that the balance remaining after the Comptroller had exercised his power to pay the expenses of the Receiver, could not have been invested in some manner to produce interest, in view of the long period which has elapsed. However, it was placed in the Treasury of the United States who has had the use of the money until the present time. Under the circumstances, since the right to recover these taxes involved a serious legal question which has only now been decided, interest should run from the date of this judgment upon the unpaid income taxes.

I shall not attempt to compute what is due, but this can be done in the final decree now to be presented in accordance with views herein expressed.