Shirley E. BAILEY et al., Plaintiffs,

v.

UNITED STATES of America,
Defendant,

v.

Robert L. VESCO and Patricia J. Vesco,
Defendants on Cross-claim,

v.

INTERNATIONAL CONTROLS
CORP., Intervenor.

Shirley E. BAILEY and Ralph P. Dodd,
Trustees, et al., Plaintiffs,

v.

INTERNATIONAL HEALTH SCIENCES,
INC., et al., Defendants,

v.

Robert L. VESCO and Patricia J. Vesco,
Defendants on Cross-claim,

v.

INTERNATIONAL CONTROLS
CORP., Intervenor.

Civ. No. 902–73.

United States District Court,
D. New Jersey.

June 23, 1976.

Hannoch, Weisman, Stern & Besser by James J. Shrager, Newark, N. J., for plaintiffs and cross-claim defendants.

Jonathan L. Goldstein, U. S. Atty. by Maryanne T. Desmond, Asst. U. S. Atty., Newark, N. J., Richard F. Mitchell, Dept. of

Justice, Washington, D. C., for defendant U. S.

Kasen & Kraemer by Waldron Kraemer, Newark, N. J., for intervenor.

COOLAHAN, Senior District Judge.

This case comes before the Court on motion of the plaintiffs (trustees for the children of Robert L. and Patricia Vesco) and by Patricia Vesco, one of the cross-claim defendants (Robert L. Vesco is the other cross-claim defendant) to stay the action in the United States District Court until the United States Tax Court may first redetermine the tax liability of cross-claim defendants,[1] or in the alternative, that the Government's counter- and cross-claims for determination of the amount of taxes due and for foreclosure be stricken.[2]

Plaintiffs originally filed suit in this court under 26 U.S.C. § 7426(a)(1)[3] to have tax liens on property held in trust for the Vesco children set aside. This property consisted of certain stocks, trust and savings accounts, and land.[4] The trustees claimed that this property belonged to the Vesco children and should not have been subject to the Government's tax liens. The United States filed a counterclaim charging that this property was fraudulently conveyed to the Vesco children with the intent to defraud Vesco's creditors. The Government filed a cross-claim against the Vescos for a determination of the tax and for foreclosure of the liens. International Controls Corp. (ICC), a judgment creditor of Robert L. Vesco, intervened in the suit in an attempt to execute on this property held in trust for the Vesco children.

Robert L. Vesco, who is a fugitive from justice (three warrants are outstanding for his arrest in New York, 73 Cr. 439, 73 Cr. 518, 73 Cr. 707; see also T 12:2–7) living in Costa Rica (T 13–T 14), engaged in a series of illegal corporate transactions which gave him control of several corporations. ICC, one of the Vesco dominated corporations, claims that Vesco looted it of several million dollars.

The S.E.C. initiated a suit against Robert L. Vesco in the United States District Court for the Southern District of New York in 1972, *S.E.C. v. Vesco*, D.C., 58 F.R.D. 182, charging 10b and 10b(5) violations. It was claimed that Vesco defrauded ICC and its stockholders. Through various manipulations, Vesco transferred assets of ICC to mutual funds which he controlled. Under the mandate of the court in the *S.E.C. v. Vesco* case, special counsel was appointed to permit ICC to recover wasted assets.

On June 7, 1973 ICC filed a complaint in the United States District Court for the Southern District of New York (73 Civ. 2518) charging Vesco and 31 other individuals and corporations with defrauding, self-dealing, wasting of corporate assets, breaching fiduciary duty to and looting ICC. *International Controls Corp. v. Robert L. Vesco, et al.*, 73 Civ. 2518. On October 5, 1973 the Southern District entered a default judgment in favor of ICC against

1. Plaintiffs also moved to correct the misnomer of the intervenor. The parties agreed at oral argument that the caption should be corrected. The motion to correct the caption was thereby withdrawn (Transcript of oral argument on the motion, page 1, lines 11–14).

2. The motion to strike the Government's counter- and cross-claims was first raised on November 27, 1973. On January 29, 1974 this Court ordered that the counter- and cross-claims be answered, thereby denying plaintiffs' motion. Plaintiffs moved several times for a reconsideration of that motion. For purposes of the present motion, the motion to strike will be treated as a renewed request to reconsider the original motion to strike.

3. "*Wrongful Levy.*—If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States. Such action may be brought without regard to whether such property has been surrendered to or sold by the Secretary or his delegate."

4. The complaint did not mention the land. The Government first raised the issue of the land in ¶ 21 of the third count of its Answer, Counterclaim and Cross-claim.

Vesco. Subsequently, on July 12, 1974, the court determined the amount of the judgment to be $2,188,354.98, plus interest at the rate of 6% per annum to run from March 1, 1973. Pursuant to 28 U.S.C. § 1963, that judgment was entered in this Court on August 29, 1974 (Docket No. Misc. 74–73).

ICC maintains that in 1971 Vesco, who was then a present and future debtor of ICC, gratuitously transferred securities and other property to defraud and hinder his creditors, including ICC.[5] On or about October 22, 1971 Robert L. Vesco and his wife Patricia executed four trust instruments naming their four children as beneficiaries. At the same time Vesco transferred three parcels of land in Morris County, New Jersey, to his children. The parcels contained respectively 45, 9, and 2.93 acres of land, which has a value of $365,000. Complaint; Answer of ANBT; Answer, Counter- and Cross-claim of the United States.

Vesco on July 14, 1973, two days after the Southern District determined the amount of ICC's judgment against him, opened four trust accounts for his children in the American National Bank and Trust Company in

Montclair, New Jersey.[6] He also opened another account for the management of the Vesco children's trust funds.

On March 2, 1973 Vesco allegedly transferred 60,000 shares of stock in International Health Sciences, Inc., to his children's trusts. He also transferred that year 96,882 shares of Fairfield General Corporation, a corporation that was spun off ICC, to his wife as custodian for his children and to the trustees of his children's trust funds. A report to the Southern District indicated that Vesco had only an airplane, a boat, and a small checking account as well as the assets in the name of trust accounts for his children.

On August 10, 1973 the District Director of the Internal Revenue Service made a jeopardy assessment against Mr. and Mrs. Robert L. Vesco for their 1971 taxes of a deficiency of $875,537.40.[7] Robert L. Vesco's individual indebtedness for 1972 totaled some $78,298.07 plus interest. IRS filed a notice of levy for $1,126,811.21 on August 15, 1974. The levy was addressed against the "Vesco Children Trust" and "Patricia Vesco, Custodian under Unif. Gift Minor Act, N.J." "as Nominees for Robert and

---

5. ICC contends that every asset of the Vescos was systematically placed in someone else's name. These assets were transferred at a time when defendants Robert L. Vesco and Patricia Vesco owed substantial sums to ICC. ICC contends that Vesco owes it over six million dollars. *See,* T 14–15.

6. ANBT (American National Bank and Trust Company of New Jersey) was named as a defendant in the original complaint, but on April 18, 1975 a consent order was filed dismissing the complaint against ANBT.

7. This 1971 tax deficiency was assessed at $775,310 plus a negligence penalty of $38,765.50 and assessed interest of $61,461.90, for a total of $875,537.40. Additional accruing interest brings the 1971 total to more than one million dollars. In March of 1973 the Internal Revenue Service twice terminated Robert Vesco's 1972 taxable year as of December 31, 1972 and made immediate assessments against him, but not his wife. The Government placed these 1972 liabilities in issue in this case in its original counterclaim, ¶¶ 5 and 6. The balance of the liability, after credits, was $78,298.07. *See,* Counterclaim, ¶ 9. There was no Government issuance to Robert L. Vesco of a statutory notice of deficiency for his 1972 tax deficiency.

This opinion will confine itself to questions surrounding only the 1971 tax liability. The 1972 tax liability presents problems because of the failure of IRS to give the Vescos a notice of deficiency which is a prerequisite to Tax Court jurisdiction. *Corbett v. Frank,* 293 F.2d 501 (9th Cir. 1961). The United States Supreme Court in *Laing v. United States,* 423 U.S. 161, 96 S.Ct. 473, 46 L.Ed.2d 416, 44 U.S.L.W. 4035 (1976), determined that 26 U.S.C. § 6851 termination of taxable year procedures must comply with 26 U.S.C. § 6861 requirements (the issuance of a notice of deficiency). Since Robert Vesco's 1972 income tax was assessed according to § 6851 procedures without the opportunity to go to the Tax Court, because no notice of deficiency was given him, the Government has advised the Court that it will abate his termination assessments for 1972 and delete them from this suit. Any excess credits previously applied to the 1972 termination account will be applied instead to the 1971 assessment. The decision to abate the 1972 tax claims will not affect the substantial foreclosure claims for the year 1971. *See,* Supplemental Counterclaim, ¶ 6, July 31, 1975; Government's Supplemental Reply Brief, June 1, 1976.

Patricia Vesco."[8] *See,* Plaintiffs' Amendment to Supplemental Complaint, Fifth Count, ¶¶5 and 6, October 29, 1975; Claim in Intervention, April 4, 1975. The United States claims that the transfers from Vesco to his children were made at a time when the United States was both a present and future creditor of Robert L. Vesco.

Both the United States and the intervenor, ICC, have asked by way of cross-claim against Robert and Patricia Vesco and by way of counterclaim against the trustees of the Vesco children's trusts that these conveyances be set aside as fraudulent.[9]

Plaintiffs'[10] application to this Court for a stay of its own proceedings is based on several grounds. First, as to the United States, plaintiffs argue that the Government does not have standing to challenge the conveyances to Vesco's children as fraudulent until Vesco's tax liability is redetermined. Movants argue that only if the United States is adjudged a creditor of Vesco can it maintain its cross-claim against Vesco and its counterclaim against plaintiffs, the trustees of Vesco's children's trusts. Further, movants argue that this Court cannot make that determination of tax liability because the Court lacks jurisdiction to do so, or, in the alternative, because to do so would violate principles of equity and comity.

Movants' argument is that there are only two alternatives open to a taxpayer to adjudicate his tax liability: (1) a suit for refund in the district court[11] after the taxpayer has paid his tax, 28 U.S.C. § 1346(a)(1), or (2) a petition in the United States Tax Court for a redetermination of his tax liability before he pays his tax, 26 U.S.C. § 6213(a). Vesco did not pay his tax but chose instead to file a petition with the Tax Court after the litigation in this case began and after the tax issues were raised in the Government's counter- and cross-claims.[12] Since Vesco chose that that forum, movants argue, the district court is without jurisdiction to adjudicate Vesco's tax liability, which is a prerequisite to a finding that the United States is Vesco's creditor for purposes of both declaring the conveyance fraudulent and void, and foreclosing on the Government's liens.

With respect to ICC, movants argue that ICC cannot challenge these conveyances as fraudulent because ICC is only a creditor of Robert L. Vesco and not a creditor of his wife, who conveyed much of the property at issue in this case.[13] Movants contend that

---

**8.** 26 U.S.C. § 6321 grants the United States a lien against all property of a delinquent taxpayer for the amount of unpaid tax assessments. 26 U.S.C. § 6331 makes the taxpayer's property subject to seizure and sale. *See, American Oil Co. v. United States,* 383 F.Supp. 1281, 1285 (N.D.Okla.1974).

**9.** The complaint in this case was filed on June 26, 1973 and the Government filed its Answer, Counter- and Cross-claims on September 19, 1973. The joinder of the counter- and cross-claims was ordered over the objections of the plaintiffs on January 29, 1974. The Vescos did not file an action for redetermination of their tax in the Tax Court until December 17, 1973, three months after the issue was presented to this Court. The Vescos filed separate petitions with the Tax Court, Docket Nos. 8872–73 and 8873–73. Government's Supplemental Reply Brief of June 1, 1976. The Vescos have other petitions before the Tax Court involving other years not here in issue. Government's Brief in Opposition to the Motion to Stay, filed October 20, 1975, page 2. *See also,* Plaintiffs' Memorandum of Law of October 8, 1975, page 2. Plaintiffs contend that the Vescos were unable to go to the Tax Court earlier because they had

not received their notices of deficiency which is the prerequisite to Tax Court jurisdiction. *Corbett v. Frank,* 293 F.2d 501 (9th Cir. 1961). *See,* Plaintiffs' Reply Brief of October 23, 1975. The Vescos filed their petitions with the Tax Court immediately after receiving their notices of deficiency for 1971. They never received notices of deficiency for 1972, so that they have not been able to file petitions with the Tax Court for that year. *See,* n.7.

**10.** The movants here are the plaintiffs and Patricia Vesco, the cross-claim defendant who had not previously accepted service in this case. It can safely be presumed that Robert Vesco, who has not been personally served with process, concurs completely in movants' petition for a stay.

**11.** A suit may also be filed in the Court of Claims. 28 U.S.C. § 1346.

**12.** *See* n. 9 above.

**13.** The land conveyed to the children's trusts was held by Robert and Patricia Vesco as tenants by the entirety.

since neither the United States nor ICC has standing to challenge these conveyances as fraudulent until Vesco's tax liability is established by the Tax Court, this action should be stayed until such an adjudication can be made.

■ Movants' first contention, that unless the Vescos owe the Government taxes in excess of their assets,[14] the Government cannot challenge the conveyances here as fraudulent because it would not be a creditor, is totally without merit. Disregarding the Government's cross-claims for the moment and their effect on the Court's jurisdiction, it is certainly clear that the United States has standing to challenge the conveyances here as fraudulent.[15] Section 7426(a)(1) of the Internal Revenue Code,[16]

under which this action was originally commenced, specifically grants district courts jurisdiction to determine if a Government levy is wrongful, that is, if the levy is made on property which does not belong to the taxpayer against whom the tax, which gave rise to the lien, is assessed. *See, Sylk v. United States,* 331 F.Supp. 661, 664 (E.D.Pa. 1971).

"Section 7426(c) specifically states that for purposes of an adjudication under this section, the assessment of tax upon which the interest or lien of the United States is based shall be conclusively presumed to be valid." [17]

Since the validity of the underlying tax assessment is not in issue,[18] the Government's position as a creditor is guaranteed.

**14.** The Government and ICC contend that the assets used to compute the Vescos' solvency should include only assets in the United States which are obtainable, including the assets transferred to the Vesco children's trusts. Since neither the boat nor the plane is available, the only assets available to ICC or the Government are the land, the small savings and custodian accounts, and the stock held in trust for the Vesco children.

**15.** Fraudulent conveyance is defined in New Jersey's codification of the Uniform Fraudulent Conveyance Act, N.J.S.A. 25:2–10, which states:

"Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

**16.** *See* n. 3 for the wording of the statute. 26 U.S.C. § 7426(a) is an exception to the general rule that no injunction may issue against the collection of a tax. 26 U.S.C § 7421 states that no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court. *See, Quinn v. Hook,* 231 F.Supp. 718 (E.D.Pa.1964), aff'd, 341 F.2d 920 (3d Cir. 1965).

**17.** Section 7426(c) reads:

"*Validity of assessment.*—For purposes of an adjudication under this section, the assessment of tax upon which the interest or lien of the United States is based shall be conclusively presumed to be valid."

**18.** It is clear from the wording of 26 U.S.C § 7426(c) that Congress intended to permit the district court to determine the ownership of the property without having to consider the validi-

ty of the underlying tax assessment. In *Rabinof v. United States,* 329 F.Supp. 830, 843 (S.D. N.Y.1971), a § 7426(a) case, the court considered the issue of the ownership of a Stradivarius violin and two rare bows which were subject to Government tax liens. The possessor contended that he and not the delinquent taxpayer owned the violin and the bows and, therefore, the liens against his property should be vacated. The court in deciding the issue of ownership presumed the validity of the tax assessment in accordance with § 7426(c). *Accord, United States v. Championship Sports, Inc.,* 284 F.Supp. 501, 508 (S.D.N.Y.1968); *Neely v. United States,* 357 F.Supp. 713, 715 (S.D. Fla.1973).

In *Stuyvesant Ins. Co. v. Dept. of Treasury,* 378 F.Supp. 7, 9 (S.D.N.Y.1974), the court succinctly stated the law in § 7426 cases. The court explained:

"Section 7426 permits suit by third parties in cases where the United States has made a wrongful levy on a taxpayer's property. In such actions, as this one, the validity of the tax assessment is conclusively presumed. 26 U.S.C. § 7426(c). This statutory provision follows the general rule of law that no person, other than a taxpayer in the appropriate judicial proceeding, may challenge the validity of a tax assessment. See *Falik v. United States,* 343 F.2d 38, 41–42 (2d Cir. 1965). Thus, plaintiffs have no standing to challenge the merits of the tax assessment; so for the purposes of this litigation it is conclusively presumed that the taxpayer owes $78,040.00 to the United States. What the statute does permit, and what plaintiffs are attempting to successfully accomplish, is the prosecution of an action to resolve the conflicting claims to the cash held by the Property Clerk."

It appears that the Vesco assets remaining in this country and subject to creditors' rights are less than the amount of tax assessed against the Vescos for the year 1971.[19] Certainly, if the Vescos by transferring these assets to their children's trust funds without fair consideration made themselves insolvent, they would have defrauded their creditors, including the United States. The United States, therefore, has standing to challenge these conveyances as fraudulent.

In every § 7426 case a final redetermination of tax liability could demonstrate that the taxpayer owes less than the Government lien or nothing at all.[20] If a plaintiff in a § 7426 action is successful in the district court, any subsequent finding that the taxpayer owes less or nothing at all to the Government is irrelevant. If, on the other hand, it is found that the property in issue does not belong to the plaintiff, then the plaintiff has no standing to complain later that the taxpayer owes nothing to the Government for the property belongs to the taxpayer.

In the instant case, even if a later determination by this Court or by the Tax Court were to indicate that the Vescos owed no tax to the Government, the property, if it is declared in this suit to have been fraudulently conveyed, would vest in the taxpayers. It seems that the cross-claim defendants should not be heard to complain because such a revesting of the property might subject that property to the attachment of creditors whom they may have defrauded. If it is here determined that this property was not fraudulently conveyed, then the Vescos' tax liability is a moot question.[21]

ICC should also be permitted to intervene despite the fact that it may be the creditor of only Robert Vesco. If the conveyances from Robert Vesco to his wife, who in turn conveyed assets to the children's trust funds, were made at a time when ICC was a creditor of Robert Vesco, as is alleged, then ICC would have standing on its own to challenge these conveyances as fraudulent. But, even if this is not the case, since the United States has standing, there is no need to consider ICC's position for purposes of deciding whether the Court must stay this action.

The fact that the United States has predicated its counter- and cross-claims on 28 U.S.C. §§ 1340, 1345 and 26 U.S.C. §§ 7402, 7403 does not adversely bear on the issue of the Government's standing to challenge the conveyances as fraudulent. In fact, since these sections permit the Government to initiate suit to collect taxes and foreclose on liens, these sections would normally place the tax assessment directly at issue before the district court. When a tax assessment is challenged in court, the assessment is presumed correct. The assessment is prima facie evidence of the taxpayer's liability. *United States v. Mauro,* 243 F.Supp. 413, 415 (S.D.N.Y.1965). As the court in *United States v. Lease,* 346 F.2d 696, 701 (2d Cir. 1965), noted, "[t]he burden is therefore on the taxpayer in the first instance to disprove the computations made by the Commissioner."[22] In such a case,

19. The land is worth approximately $365,000; the trust funds have about $30,000, and the stocks have little, if any, value, all of which is admitted by plaintiffs. *See* plaintiffs' original brief in support of this motion for a stay. *See* T 18:9–18. The airplane and boat are either not within the reach of this jurisdiction or not available to these creditors.

20. In all § 7426 cases it is possible that a later determination by an appropriate court may show that there is no tax owed. However, such a possibility did not induce Congress to change § 7426. Congress has permitted such a condition to exist. There is no contention that this section is unconstitutional.

21. However, movants do admit, in an earlier brief, that with regard to some of the conveyances the Government has a stronger case than with regard to others. This suggests that even movants see that there is a real issue on the question whether there was a fraudulent conveyance.

22. Courts are in disagreement over the type of burden placed on the taxpayer. Some courts say it is the burden of persuasion; others say it is the burden of moving forward with the evidence. *See* the discussion in *United States v. Rexach,* 482 F.2d 10, 15–16 (1st Cir. 1973), *cert. den.,* 414 U.S. 1039, 94 S.Ct. 540, 38 L.Ed.2d 330 (1973); *United States v. Lease, supra* at 699–701; *see also, United States v. Rindskopf,*

again the Government would be presumed a creditor, and, for the reasons discussed above, would have standing in this action to challenge the conveyances as fraudulent.

Movants argue that even if the Government and ICC have standing to challenge these conveyances as fraudulent, and the Court finds that they are fraudulent, the issue of the Vescos' tax liability must be decided before the Government liens are foreclosed.[23] However, movants allege that only the Tax Court has jurisdiction to determine that issue. The United States contends that the tax liability of the Vescos should be determined by this Court so that the Government can foreclose on its liens and collect the tax allegedly owed. Movants believe that the Vescos have chosen their forum, the Tax Court, and should be permitted to pursue an adjudication before that tribunal.

■ The statement that a taxpayer who wishes to challenge a tax assessment against him has several choices of forums open to him is true. However, it is not true that when the taxpayer fails to pay an assessment and flees the country, the Government must wait until the taxpayer chooses a forum. The Government can initiate actions for the collection of a tax or foreclosure of tax liens where the taxpayer has neglected to pay his tax. 28 U.S.C. §§ 1340, 1345; 26 U.S.C. §§ 7402, 7403.

Here, the Vescos did not initiate this action. It was commenced by the trustees of the Vesco children's trusts. The Government's counterclaim and cross-claim brought the Vescos into the case, thereby exercising its right to initiate suit for the collection of its tax.

It is true, as the Vescos note, that because they lacked a notice of deficiency, they could not have proceeded to the Tax Court before the Government's cross-claim was filed in this action.[24] However, the Vescos should not be heard to complain about the Government's lack of diligence when they have fled the country in an attempt to avoid large judgments obtained for fraudulent dealings on the part of Robert Vesco. The Government's choice of procedures to collect taxes owed was obviously influenced by Vesco's behavior. This is not the normal tax collection problem. Vesco is not in the position of the average taxpayer who, as a policy matter, should have the initial option to challenge, where he wishes, tax assessments made against him. Vesco's actions suggested that the Government's ability to collect its tax might be in jeopardy.

■ This case should not be analyzed from the point of view that the only options are those of the taxpayer, such as a taxpayer-initiated suit for refund under 28 U.S.C. § 1346 or a taxpayer's petition in the Tax Court for a redetermination of his tax under 26 U.S.C. § 6213.[25] This analysis ob-

---

105 U.S. 418, 26 L.Ed. 1131 (1881); *Psaty v. United States,* 442 F.2d 1154, 1158–60 (3d Cir. 1971). For purposes of this opinion, the type of burden involved is unimportant. The only important fact is that the tax is presumed valid.

23. Movants argue that since the Government and ICC must await a decision on the Vescos' tax liability before they can foreclose on their liens, it would be equitable and convenient to stay this action until the tax liability is determined by the Tax Court.

24. *See* nn. 7 and 9.

25. Movants argue that once the taxpayer chooses to sue in the Tax Court, his alternative right to sue in the district court is precluded. *Ellis v. Commissioner,* 14 T.C. 484, 486 (1950); *Elbert v. Johnson,* 69 F.Supp. 59, 60 (S.D.N.Y. 1946), *aff'd,* 164 F.2d 421 (2d Cir. 1947); *accord, Cook v. United States,* 108 F.2d 804, 805 (5th Cir. 1940), *cert. den.* 310 U.S. 636, 60 S.Ct.

1079, 84 L.Ed. 1406 (1940). There is no doubt that once the taxpayer's tax liability has been determined by either court, it cannot be relitigated for the same taxable year, but there is nothing in any of the above cited cases which speaks to the question of a *Government initiated* action on the issue of tax liability. There is no attempt here to relitigate anything, nor did the taxpayer in this case first raise the issue of his tax liability. There is neither support nor merit for the proposition that the Government must await a delinquent taxpayer's decision to choose his forum before it can initiate its own action in the district court. Nor is the Court impressed by movants' argument that the Government was dilatory in not serving notices of deficiency on the Vescos. As this Court has noted above, the Vescos have absented themselves from the jurisdiction. This often made normal procedures difficult.

scures the Government's right to file suit for the collection of taxes. *See,* 26 U.S.C. §§ 7402 and 7403; 28 U.S.C. §§ 1340 and 1345. The Government has the right to initiate suit for the collection of taxes in cases such as this, when the taxpayer has neglected to pay his tax, and is, therefore, not required to wait for the taxpayer to decide in which forum he wishes to proceed.

There is nothing in § 7426 nor in the cases that suggests that the presence of the taxpayer in the suit mandates a determination of his tax liability by the Tax Court, if a determination of his tax liability is necessary at all.[26]

In the present case, the Government does seek in its cross-claim to foreclose on its tax lien. The Government points out that movants' argument is wrong in that there are several statutes which provide the Court with jurisdiction to determine the tax issues in this case.

The position of the United States is that the present action was substantially changed when the Government was permitted to file its cross-claims seeking foreclosure of tax liens against the Vescos.[27] The Court agrees with the Government's contention that the counter- and cross-claims should be treated as independent causes of action with their own jurisdictional bases. The Government relies upon 26 U.S.C. §§ 7402 and 7403 and 28 U.S.C. §§ 1340 and 1345 as the jurisdictional underpinnings for its cross-claims and counterclaim, and contends they give the district court jurisdiction to determine the tax liability. This Court is urged by the Government to proceed with the action and, if necessary, determine the Vescos' tax liability along with its determination of the ownership of the property in question and, assuming a favorable determination for the Government, foreclose on the tax liens.

■ It is clear that 26 U.S.C. §§ 7402(a), 7403(a) and 28 U.S.C. §§ 1340, 1345 do give jurisdiction to the district court to decide all issues necessary for the enforcement of our internal revenue laws and for the enforcement and collection of Government liens.[28]

---

**26.** In *United States v. Championship Sports, Inc., supra,* 284 F.Supp. at 507, the court concluded that as to one defendant § 7426(c) made the tax assessment conclusive, but as to the other defendants, who were taxpayers, they could still contest the correctness of the assessment under § 7403.

**27.** It is evident from the discussion above that if this were a simple § 7426(a) suit, there would be no need for any court to determine the taxpayers' tax liability as that matter would be irrelevant to the question of ownership as between the third party, allegedly wrongfully levied upon, and the taxpayer.

**28.** 26 U.S.C. § 7402(a) reads:
"The district courts of the United States at the instance of the United States shall have such jurisdiction to make and issue in civil actions, writs and orders of injunction, and of *ne exeat republica,* orders appointing receivers, and such other orders and processes, and to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws. The remedies hereby provided are in addition to and not exclusive of any and all other remedies of the United States in such courts or otherwise to enforce such laws."
26 U.S.C. § 7403(a) provides:
"In any case where there has been a refusal or neglect to pay any tax, or to discharge any liability in respect thereof, whether or

not levy has been made, the Attorney General or his delegate, at the request of the Secretary or his delegate, may direct a civil action to be filed in a district court of the United States to enforce the lien of the United States under this title with respect to such tax or liability or to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability."
26 U.S.C. § 7403(c), not directly relied upon by the Government, also supports its position. The section reads:
"The court shall . . . proceed to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property, and, in all cases where a claim or interest of the United States therein as established, may decree a sale of such property, . . . ."
Section 1340 reads:
"The district courts shall have original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue, or revenue from imports or tonnage except matters within the jurisdiction of the Customs Court."
28 U.S.C. § 1345 states:
"Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof

Under these sections the Court would have jurisdiction to adjudicate the Vescos' tax liabilities. *See, Miller and Miller Auctioneers, Inc. v. G. W. Murphy Industries*, 472 F.2d 893, 895 (10th Cir. 1973); *Pettyjohn v. Pettyjohn*, 192 F.2d 322, 325 (8th Cir. 1951). Movants do not dispute this fact. However, this is a § 7426 suit as well as a §§ 7402, 7403 suit. In the former, the tax assessment cannot be challenged, but in the latter it usually must be. Neither the parties nor the Court could find any case that might indicate which section takes precedence. Logically, it seems to the Court that though the tax is presumed valid and unassailable in a § 7426 suit, the taxpayers themselves do have the right to have their tax assessment challenge adjudicated before the Government liens are foreclosed, *United States v. O'Connor*, 291 F.2d 520, 527 (2d Cir. 1961); *Bowers v. American Surety Co.*, 30 F.2d 244, 245 (2d Cir. 1929), *cert. den.* 279 U.S. 865, 49 S.Ct. 480, 73 L.Ed. 1003 (1929), but not necessarily before a decision is reached on the question of ownership of the assets. The Court believes that it is free to proceed to an adjudication of ownership of the assets in the § 7426 suit and then to deal with the §§ 7402, 7403 action for foreclosure of the tax liens,[29] or to proceed with the two actions simultaneously.

However, movants next assert that even if this Court has jurisdiction to adjudicate the Vescos' tax liability, once the Tax Court has the matter before it, the district court must, or, at least should, defer to it. The Tax Court is a court of special expertise. It is particularly suited to adjudicate tax liability. Nonetheless, district courts are often required to make similar findings of tax liability.

In *In re Commercial National Bank of Shreveport*, 139 F.Supp. 794, 795 (W.D.La. 1956), the court was faced with a question similar to the one at issue here. The question was, did the taxpayer have to go to the Tax Court to litigate the issue of his tax liability or could the district court do it? The court stated, "I am of the view that it [the district court] had jurisdiction to determine all claims, including that of the United States for income taxes, without the necessity to follow the usual routine of review by the Tax Court." *See, Sonitz v. United States*, 221 F.Supp. 762, 764–65 (D.N.J.1963), *overruled on other grounds, Quinn v. Hook*, 231 F.Supp. 718 (E.D.Pa. 1964), *aff'd per curiam on grounds different from the district court*, 341 F.2d 920 (3d Cir. 1965). In *United States v. Pettyjohn*, 84 F.Supp. 423, 426 (W.D.Mo.1949), the court stated that "[w]hile the Tax Court performs judicial functions, nevertheless it is an administrative board within the Executive Branch of the Government, and its jurisdiction as an administrative board could in no case interfere with the jurisdiction of a district court to enforce the government's lien."[30]

Jurisdiction is concurrent in the district court and the Tax Court. In *Florida v. United States*, 285 F.2d 596, 604 (8th Cir. 1960), the court stated in dictum:

"The question of whether tax liabilities involved in the litigation pending in the tax court should first be determined in the tax court or whether such liability should be determined in this case, remains open for consideration by the trial court."

---

expressly authorized to sue by Act of Congress."

**29.** Movants also argue that a stay should be granted them pursuant to 26 U.S.C. § 7422(e). However, as the Government has pointed out, that section applies only to refund actions, which this is not. *See Chommie, Federal Income Taxation* (2d ed. 1972). Another statute relied upon by movants is 26 U.S.C. § 6863(b)(3). However, that section refers to stays in cases where an administrative sale threatens to take away the taxpayer's property

before a hearing can be held. In the present action, the Government intends to have a judicial sale under 26 U.S.C. § 7403(c) after there has been a full adjudication of the taxpayers' tax liability, but wants to preserve its right to have that liability determined by this Court.

**30.** The Tax Court was created as an administrative body and as part of the Executive Branch of the Government. It is an Article I, not an Article III, court. *See United States Constitution*, Articles I, III; *Wright, Law of Federal Courts*, § 5 (2d ed. 1970).

The court in *Florida v. United States* left the matter to the discretion of the trial court. The court continued:

"Here the conflict is between federal courts alone. Courts are not required by law to forbear but may do so as a matter of comity to avoid duplicate litigation. *Kline v. Burke Constr. Co.*, 260 U.S. 226, 229, [43 S.Ct. 79, 67 L.Ed. 226]; *Covell v. Heyman*, 111 U.S. 176, 182, [4 S.Ct. 355, 28 L.Ed. 390]. There is no rigid or inflexible rule for determining priority of cases pending in federal courts involving the same subject matter. . . . *Kerotest Mfg. Co. v. C–O–Two Co.*, 342 U.S. 180, 183, [72 S.Ct. 219, 221, 96 L.Ed. 200]." [31]

In *In re Fotochrome, Inc.*, 346 F.Supp. 958, 961 (E.D.N.Y.1972), the district court held that the bankruptcy court *should*, but not must, await a determination by the Tax Court on the issue of back taxes. Yet, there the court noted that jurisdiction in such cases was concurrent. In *United States v. Mauro*, 243 F.Supp. 413, 414–15 (S.D.N.Y.1965), the court concluded that "[t]he pendency of a suit in the Tax Court

for review of the deficiency does not preclude the prosecution of this action [in the district court]." The court in *Mauro* specifically found that "[t]he taxpayer may challenge the underlying merits of the assessment here." [32]

█ In *United States v. O'Connor, supra* at 528, the court stated that the determination of which court should take jurisdiction is a matter of discretion. Therefore, the Court will consider in its discretion whether to proceed with that part of this action which may involve an adjudication of the tax liability of the Vescos. Two arguments are addressed by plaintiffs and cross-claim defendant Patricia Vesco to this Court's discretion. The first is that the Court should stay the action based on considerations of equity, and, secondly, on considerations of comity. [33]

It is difficult for this Court to accept plaintiffs' and cross-claim defendant's equity argument. True, the Court must separate and delineate the present movants from Robert Vesco and keep their respective interests distinct. Clearly Robert Ves-

**31.** In *United States v. O'Connor, supra* at 528, the court felt that the statement that the Tax Court and district court have concurrent jurisdiction to determine tax liability was a position "not altogether reconcilable" with the statement made on a now defunct Senate Committee report. The Government in its supplemental reply brief notes that movants' reference to this passage in *O'Connor* is misleading because both movants and the *O'Connor* court took the statement out of context. The "interference" language relied upon by the *O'Connor* court was a reference in the report to a provision in a long defunct draft of a bill passed only by the House which had provided that if IRS made a jeopardy assessment for a tax year already before the Board of Tax Appeals (now the Tax Court), the latter would lose jurisdiction. The Senate found this limit unnecessary. The jeopardy assessment should not interfere with the jurisdiction of the Tax Court, the Senate concluded. This discussion in *O'Connor* is therefore irrelevant to our case.

**32.** In *Mauro*, movants contend, the reason the district court ruled on the tax liability issue was that the plaintiff therein did not press its case before the Tax Court. This may be true but, as in *Mauro*, the Government argues that the Tax Court litigation is proceeding very slowly. However, the important consideration is not which court decided the issue, but the

fact that the court saw the issue as one of concurrent jurisdiction.

**33.** There is no doubt that

"[a] district court has inherent power to control the disposition of the causes on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants. The exertion of this power calls for the exercise of a sound discretion. Where it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed. Among these competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay. *See Landis v. North American Co.*, 299 U.S. 248, 254–255, [57 S.Ct. 163, 81 L.Ed. 153]." [*CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).]

A request for a stay calls for a reasoned exercise of discretion by weighing interests and considering prejudice to the parties involved.

co's equitable relief would be barred by his unclean hands. The Government argues that plaintiffs are merely the alter ego of Robert Vesco. Yet that conclusion assumes an issue in this action. The Court will not assume an identity of the two interests.

However, movants argue that one important reason they so adamantly press for a stay of this action is that they fear that if the action proceeds, the Vescos may be called for depositions in this country. If the Vescos are ordered to come to Newark, New Jersey, for depositions, they will disobey that order and perhaps default. Obviously, this will prejudice the plaintiffs. Counsel for plaintiffs and Patricia Vesco stated this very bluntly:

"What I suspect, or my concern is that we will get a deposition notice, if an answer is filed for Mr. and Mrs. Vesco, asking that they appear for depositions in Newark, New Jersey, *which they are not going to do, obviously.*

What I am concerned with, your Honor —obviously, this is what they would do— we would then come in before your Honor; we would have an argument as to whether or not maybe depositions would be held in some other jurisdiction. Your Honor may rule favorably on that; your Honor may rule against it. If your Honor rules against it, *an order may be issued compelling submission to the discovery, which will not be honored.* And then a judgment will be entered." (Emphasis added.) (T 7:20–T 8:18)

This may be true (the Court expresses no advisory opinion on how it would decide such a motion), and harsh on plaintiffs, but it does not add much equity to movants' side for the Court to be told by counsel for one of the movants, Patricia Vesco, that a court order will be defied.

If there is any reason for this Court not to adjudicate the Vescos' tax liability, it is not for reasons of equity.

Movants point out that courts have traditionally bowed to other courts or tribunals of more specialized expertise to allow them to adjudicate matters within their own particular field. This concept of defer-

ence to other courts is what is known as comity. The court in *Humboldt Placer Mining Co. v. Best,* 185 F.Supp. 290, 291–92 (N.D.Cal.1960), *vacated and remanded,* 293 F.2d 553 (9th Cir. 1961), *reversed,* 371 U.S. 334, 83 S.Ct. 379, 9 L.Ed.2d 350 (1963), stated this principle most clearly:

"... [w]here a court has jurisdiction of an entire controversy, it may wait until a court or tribunal of more limited jurisdiction adjudicates the issues peculiarly within its competency, and then give binding effect to the decision of such court or tribunal . . . ."

In *United States v. Stone,* 59 F.R.D. 260, 267 (D.Del.1973), the court stayed its action until the taxpayer's tax liability was first determined by the Tax Court. In *Stone* the court stated its reasons for the stay in these terms:

"To prevent duplicative expenditures of judicial time and afford the taxpayer an adjudication of her tax liability before the Tax Court, this Court is of the opinion it should stay this action until the Tax Court's final determination of Stone's tax liability. See *United States v. O'Connor,* 291 F.2d 520, 528 (2nd Cir. 1961). Thus, unless the defendant moves to lift the stay *or fails to diligently prosecute her case before the Tax Court,* this action will be stayed." (Emphasis added.)

The important consideration according to the court in *Stone* is the diligence in pursuing the action in the Tax Court. There is ample indication here that the Tax Court litigation has not been diligently pursued.

Comity, however, also requires that a court which has first undertaken an action should proceed with it despite the fact that another court or tribunal has concurrent jurisdiction. In *In re Fotochrome, Inc., supra* at 961, the court noted that "[i]n cases of concurrent jurisdiction the court which first reaches the case for trial may then proceed to a final decision without interruption and the doctrine of res adjudicata will apply to the result. *Ohio Steel Foundry Co. v. United States,* 38 F.2d 144, 149, 150 [69 Ct.Cl. 158] (Ct.Cl.1930); *Comas, Inc. [v. Commissioner,* 23 T.C. 8 (1954)] *su-*

*pra,* 10–11." *See also, Ellis v. Commissioner,* 14 T.C. 484, 487 (1950); *United States v. Leary,* 228 F.Supp. 467 (D.Conn.1963), *aff'd,* 330 F.2d 497 (2d Cir. 1964), *cert. den.,* 379 U.S. 837, 85 S.Ct. 72, 13 L.Ed.2d 44 (1964). This would be true despite another court's expertise, if judicial economy would not be sufficiently served by bowing to the more specialized tribunal.

 Movants rely on *United States v. O'Connor, supra* at 528, where the court decided to stay its action until the Tax Court proceeded to adjudicate the taxpayer's liability because the taxpayer had elected that forum. The court noted that "a wise exercise of discretion would generally favor a procedure where a taxpayer who has elected to have his liabilities determined by the Tax Court ought to be allowed to follow that course to a conclusion, *provided he diligently pursues it*" (emphasis added). The *O'Connor* court considered the taxpayer's election of forums as the most important factor to be considered. The Court has already in this opinion expressed its objections to placing primary importance to the selection of forums by a fugitive from justice. Likewise, it appears that the litigation in the Tax Court has been proceeding very slowly. It is not being pursued very diligently, from all the indications this Court has. No interest of comity would be served in staying an adjudication of the Vescos' tax liability where the issue was first raised in this action and where this action has proceeded diligently despite the lack of cooperation from the Vescos, while the Tax Court litigation has not moved ahead. Nor is there any indication that the tax issues involved would call for the expertise of the Tax Court.

Since the Court has decided it does not need to wait for an adjudication of tax liability for purposes of the § 7426 suit, and since it has jurisdiction to adjudicate the Vescos' tax liability, it would be inefficient to proceed on just the § 7426 suit and wait possibly two or more years for a determination in the Tax Court, thereby tying up the assets to the detriment of both the collection of the Government tax and the interests of ICC. The Court believes it is a sound exercise of discretion to deny movants' application for a stay of these proceedings. Plaintiffs will not be prejudiced by this denial of their application because an adjudication of plaintiffs' ownership of some, or all, of these assets will terminate their involvement in this action to the extent of their ownership. If it is determined that they do not own this property, Vescos' tax liability will not affect them. Even if the property at issue is determined to belong to the Vescos, the Vescos will receive a full adjudication of their tax liability before any foreclosure of liens or sale will be forced upon them.

Movants' application for a stay of this Court's proceedings or, in the alternative, that the Government's counterclaim and cross-claims be stricken must be denied.

Counsel are to submit an order in conformity with this opinion.