

Craig Stephen Boda, P.A., Daytona Beach, Fla., for plaintiff.

Jose F. DeLeon, Trial Atty., Tax Div., Dept. of Justice, Washington, D.C., for defendants.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE KENDALL SHARP, District Judge.

This action for wrongful levy and lien, and for quieting title was tried before the Court without a jury on July 29, 1986. At the end of plaintiff's case, the Court granted defendants' motion for involuntary dismissal in accordance with Rule 41(b) of the Federal Rules of Civil Procedure. Based upon the facts admitted by the parties in their joint pre-trial stipulation and the testimony at trial, the Court enters the following findings of fact and conclusions of law pursuant to Rules 41(b) and 52(a) of the Federal Rules of Civil Procedure.

### FINDINGS OF FACT

In April, 1980, a house and lot, located at 410 Country Circle Drive, Daytona Beach, Florida (Property 1), was purchased and titled in the name of plaintiff K.A. Morris. At that time, a criminal investigation was proceeding against his son Stephen M. Morris for trafficking in cannabis. Plaintiff's son presently is incarcerated for conviction

**K.A. MORRIS, Plaintiff,**

v.

**UNITED STATES of America and the Department of the Treasury, Internal Revenue Service, Defendants.**

**No. 85–647–CIV–ORL–18.**

United States District Court, M.D. Florida, Orlando Division.

Aug. 22, 1986.

Nunc Pro Tunc July 29, 1986.

on state charges resulting from his cannabis involvement. Additionally, in April, 1980, plaintiff purchased Lot 99, Quiet Place in the Country, Volusia County, Florida (Property 2), and acquired title in fee simple.

In September, 1980, plaintiff sold Property 1 to James R. and Myrtice L. Peacock, who assumed the first mortgage and entered into a second mortgage with plaintiff. On April 1, 1985, a jeopardy assessment against plaintiff's son for taxable years 1978 through 1980 was made in the amount of $291,525.80, pursuant to 26 U.S.C. § 6861. Consequently, plaintiff's son is indebted to defendant the United States in the amount of $291,525.80 plus interest. On May 7, 1985, defendant Department of the Treasury, Internal Revenue Service (IRS) served a Notice of Levy on James and Myrtice Peacock for Property 1, thereby seizing the mortgage payments due plaintiff as his son's nominee in the amount of $301,040.89. Defendant IRS also filed a Notice of Lien on Property 2 owned by plaintiff as nominee for his son in the same amount of $301,040.89. On July 25, 1985, the Honorable W. Earl Britt, Chief Judge of the Eastern District of North Carolina, entered an order that both the decision to make the jeopardy assessment against plaintiff's son and the amount assessed were reasonable under the circumstances.

By detailing his employment, savings, selling, and investment history, plaintiff sought to establish that the subject properties were purchased by him with his own funds and that he was not the nominee of his son. Plaintiff testified that he has been gainfully employed consistently from 1937 until 1980. The bulk of his employment was for a railroad. For 1973 through 1979, the tax years about which plaintiff testified, he claimed three dependents each year and his highest gross income was $25,-937.98 in 1979. Nevertheless, plaintiff testified that he saved substantial money each year.

Plaintiff stated that he has been distrustful of banks. He maintained a sparingly utilized checking account primarily for paying bills. The largest amount about which he testified as having in a savings or certificate of deposit account for the period 1975 through 1980 was approximately $25,-000.00. Plaintiff has preferred to deal in cash and cashiers checks. Furthermore, plaintiff testified that he had secreted sums from $50,000.00 to $80,000.00 in his house and on his property over fifty working years. He testified that this money has been kept in his house in a filing cabinet, a chest, a sewing machine, the refrigerator, the washing machine, and behind the baseboard under the kitchen sink. He also has hidden money in his yard. These "reserve" funds have derived from plaintiff's selling real estate, cashing checks, and engaging in entrepreneurial endeavors, such as a honey business. Plaintiff ceased such "side activities" in 1962. Plaintiff's reserve funds have been a source of ready cash for him.

With respect to real estate investments, plaintiff described various property transactions in which he had been involved from 1939 through 1970. The properties, which plaintiff purchased, were acquired with cash or cashiers checks. His proceeds from sales of real estate ranged from approximately $500.00 to $7,000.00. These funds were stashed in plaintiff's reserve funds, and were not used to satisfy daily expenses.

Plaintiff alleged that he purchased Property 1 as an investment. He was informed as to the availability of the house and lot through his son, who lived next door to the property in his girlfriend's house. Although the price of Property 1 was $100,-000.00, plaintiff decided on the purchase because he was able to assume a $73,000.00 mortgage with a $27,000.00 down payment. He testified that he made mortgage payments from the reserve funds in his house. For this transaction, plaintiff used an attorney obtained by his son. Payments to the attorney were by check, cashiers check or cash and were delivered by plaintiff or his son.

Plaintiff sold Property 1, taking back a second mortgage from the Peacocks. Part

of this transaction involved a $10,000.00 downpayment on an automobile to James Peacock, a car dealer. The car was purchased for and titled to the girlfriend of plaintiff's son. The Peacocks made mortgage payments to plaintiff until the IRS levy was filed. The Peacocks, who currently reside on Property 1, now make mortgage payments to the IRS.

For Property 2, a lot, plaintiff allegedly paid $14,500.00 in cash. This transaction also was handled by an attorney retained through plaintiff's son. IRS Special Agent Craig Garvin testified that his investigation had revealed that Properties 1 and 2 were purchased by cashiers checks drawn from savings accounts in the name of the girlfriend of plaintiff's son. Garvin affirmed that the purchase funds for the properties were from plaintiff's son and definitely were not those of plaintiff.

In this action, plaintiff asserted that the subject properties were purchased with his personal funds and that he was not the nominee of his son Stephen Morris. Defendants contended that plaintiff was the nominee of his son regarding the properties subject to the levy and lien at issue. Defendants maintained that plaintiff did not purchase the subject properties with his own funds.

## CONCLUSIONS OF LAW

The Court has jurisdiction of this wrongful levy and lien, and for quieting title action pursuant to 26 U.S.C. § 7426(a)(1), 28 U.S.C. § 1346(e) and 28 U.S.C. § 2410. Since plaintiff claims an interest in the property that has been levied upon by defendants, his exclusive remedy is a wrongful levy action under 26 U.S.C. § 7426 because that section waives sovereign immunity of the United States for such actions. 26 U.S.C. § 7426; *United Sand and Gravel Contractors, Inc. v. United States*, 624 F.2d 733, 739–40 (5th Cir.1980). Plaintiff "was entitled to raise virtually any legitimate and available objection he might have had to the validity of the levy," but he could not challenge the merits of the tax assessment itself. *Myers v. United States*,

647 F.2d 591, 603 (5th Cir. Unit A 1981); *see Shannon v. United States*, 521 F.2d 56, 59 (9th Cir.1975), *cert. denied*, 424 U.S. 965, 96 S.Ct. 1458, 47 L.Ed.2d 731 (1976); *Loving Saviour Church v. United States*, 556 F.Supp. 688, 690 n. 2 (D.S.D.1983), *aff'd*, 728 F.2d 1085 (8th Cir.1984) (per curiam). The tax assessment not only is presumed correct, but also is prima facie evidence of the taxpayer's liability. *Bailey v. United States*, 415 F.Supp. 1305, 1311 (D.N.J.1976) (citation omitted).

In a post-levy proceeding, the IRS "must justify its extraordinary action in connecting a third party's property to the particular delinquent taxpayer." *Valley Finance, Inc. v. United States*, 629 F.2d 162, 171 n. 19 (D.D.C.1980), *cert. denied sub nom. Pacific Development, Inc. v. United States*, 451 U.S. 1018, 101 S.Ct. 3007, 69 L.Ed.2d 389 (1981). The plaintiff, however, retains the ultimate burden of proof of persuading the district court that the levy should be overturned. *Id.* When the basis for IRS action has been explored during discovery, the seizure of property potentially may become permanent, and the trial court is rendering final judgment, "the government must establish its asserted nexus between taxpayer and a third party by substantial evidence." *Id.*

Considering plaintiff's hourly and salaried earning history; his savings at banks and on his premises; and his selling and investment experience, the Court concluded that plaintiff's testimony, that he was able to amass so much cash, was not credible. *See Wheeler v. Holland*, 218 F.2d 482, 483 (5th Cir.1955) (per curiam). Furthermore, the Court concluded that defendants, through the testimony of Special Agent Garvin, showed that the checks that purchased the subject properties were drawn from the savings accounts of the girlfriend of plaintiff's son. Consequently, defendants established the nexus between the delinquent taxpayer and the third party, plaintiff Morris, by substantial evidence. The Court concluded that plaintiff did not sustain his burden of proving that the levy and lien should not have been imposed.

Therefore, the titles could not be quieted in his name.

At the close of plaintiff's case, the Court granted defendants' Rule 41(b) motion for involuntary dismissal. Rule 41(b) of the Federal Rules of Civil Procedure states in pertinent part:

> After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence.

Based upon the facts and the applicable law, the Court determined that plaintiff had shown no right to relief and that there was no need for defendants to present their case. Thus, defendants' motion for involuntary dismissal was appropriately GRANTED as explained herein.